## Case No. 17,152.

WARD et al. v. CHAMBERLIN et al.

[9 Am. Law Reg. 171; 2 West. Law Month. 621.]

Circuit Court, N. D. Ohio. Nov., 1860.

ADMIRALTY DECREES—MODE OF EXECUTION—LEVY ON CHATTELS—EXECUTION AGAINST LAND—COURT RULES—BILL FOR DISCOVERY.

1. Decrees in the admiralty can only be enforced in the courts of the United States, in the mode and by the process properly ordained by acts of congress and rules of court for their execution.

2. The character and effect of such decrees in admiralty, and their modes of execution, are within the province of congress to determine.

3. Under the existing acts of congress and rules of court, the libellant in admiralty may have an attachment or a capias against the person of the defendant, or a fieri facias against his goods and chattels: and these are the only writs and the only mode prescribed, whereby an admiralty decree can be lawfully executed in the circuit and district courts.

4. The court of admiralty has no power to issue an execution against the lands of a defendant, to collect the amount due on a decree in admiralty, for the payment of money.

5. The supreme court of the United States has power to regulate the practice of the courts of admiralty, and to frame rules in relation to executions and other process to be used therein.

6. An admiralty decree is not a lien on land, and has never been treated as a lien on land in either England or this country.

7. A court of equity will grant a discovery and general relief in a case where a plain, adequate, and complete remedy cannot be had at law; hence, when an execution has been issued, and no property found on which to levy, a judgment creditor may file his bill for relief, and is entitled to the aid of the court, to discover and apply the debtor's property to the payment of the judgment.

Swayne, Andrews & Wyman, for complainants.

R. S. Spalding and R. P. Ranney, for defendants.

WILLSON, District Judge. Several important and novel questions of law are presented for our consideration in this case. They arise on a demurrer to the complainants' bill, interposed by Philo Chamberlin, one of the defendants. Upon some of these questions, the members of this court entertain conflicting opinions. But this conflict of opinion is, perhaps, not to be regretted, since, by certifying the points of difference, the parties will be enabled to take the case at once to the supreme court, and there obtain a final settlement of the questions of law which it involves. In differing from the learned presiding judge, it is but just to myself to state the reasons in support of my own conclusions.

The facts in the case are correctly set forth in the abstract of the bill furnished by the counsel for complainants. On the 12th of November, 1856, the complainants obtained a decree in the circuit court of the United States

for the Southern district of Ohio against two of the defendants, Chamberlin and Crawford. [See Cases Nos. 17,158 and 17,151.] The suit was a proceeding in admiralty for damages sustained by the libellants in the loss of the steamer Atlantic by a collision with the propeller Ogdensburgh, a vessel owned by said defendants. The case was appealed to the supreme court of the United States, and the decree of the circuit court was there affirmed. [21 How. (62 U. S.) 572.]

On the 7th of July, 1859, by agreement of the parties, a joint decree was entered in the circuit court (on a mandate from the supreme court) against Chamberlin and Crawford and their sureties, in the appeal to the supreme court. This decree provided, that if certain payments should be made by the original defendants, at defined periods, then no execution should issue on the decree; but in default of such payments being made, the complainants were authorized to proceed and collect the amount due as they should see fit. Two payments were made as required by the decree, and it is averred that two defaults had occurred previous to the filing of the bill in this case, and that the complainants have caused execution to issue upon said decree, against the goods and chattels, lands and tenements of the defendants in said decree; that the marshal found no goods or chattels whereon to levy, and that for the want of such goods and chattels, he levied on the lands and tenements of said defendants, described in the bill, and situate in the Northern district of Ohio. The other defendants, it is alleged, claim rights in and liens upon said land, the nature and extent of which they are called upon to disclose. It is also averred in the bill, that said defendants in said decree have no goods or chattels liable to execution, and no lands or tenements in the state of Ohio, other than those described as levied upon by the marshal. The prayer of the bill is for a discovery, and for an adjustment of liens upon and of claims of certain of the defendants in the land; and also for a sale of the several parcels of real estate levied upon, and the proceeds applied in payment of the amount due on said decree. There is also a prayer for general relief. A portion of the defendants claiming liens upon the land have answered, disclosing their several interests in the property. But the questions of law which we are now called upon to decide, arise upon the demurrer to the complainants' bill. The cause of demurrer is placed on two grounds. 1st. That the courts of the United States, in the exercise of admiralty powers, have no authority to issue executions against lands upon decrees in admiralty. 2d. That the facts, as set forth in the bill, do not, in a court of chancery, entitle the complainants to the general relief prayed for.

The authority by which the federal courts are empowered to issue executions upon decrees in admiralty, is to be found in the various acts of congress relating to process, and in the rules of practice, prescribed by the supreme court for the government of the circuit and district courts of the United States. It, therefore, becomes necessary to refer to and carefully examine those acts of congress, and those rules of admiralty practice, in order to determine the first question raised by the demurrer. By the 14th section of the judiciary act of 1789, the courts of the United States are empowered to issue all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law. 1 Stat. 81. The second section of the process act of 1789 provides, that the "writs and executions," in causes of equity and admiralty and maritime jurisdiction, shall be according to the course of the civil law. 1 Stat. 93. The second section of the process act of 1792 declares, that the forms of writs, executions, and other process in courts of equity, and courts of admiralty and maritime jurisdiction, shall be according to the principles, rules, and usages which belong to courts of equity, and to courts of admiralty respectively, as contradistinguished from courts of common law, except so far as may have been provided for by the act establishing the judicial courts of the United States, subject, however, to such alterations and additions as the said courts shall, in their discretion, deem expedient, or to such regulations as the supreme court of the United States shall think proper, from time to time, by rule, to prescribe to any circuit or district court concerning the same. 1 Stat. 275. By the act of May 19th, 1828 [4 Stat. 278], which has application to the federal courts in states admitted into the Union since the 29th day of September, 1789, it is provided, that proceedings in suits in courts of admiralty and maritime jurisdiction shall be according to the principles, rules, and usages which belong to courts of admiralty as contradistinguished from courts of common law: subject, however, to such alterations and additions as the said courts shall, in their discretion, deem expedient, or to such regulations as the supreme court of the United States shall think proper, from time to time, by rules, to prescribe to any circuit or district court concerning the same. And by the third section of the same law it is further provided, that "writs of execution and other final process issued on judgments and decrees, rendered in any of the courts of the United States, and the proceedings thereupon shall be the same, except their style, in each state respectively as are now used in the courts of such state, saving to the courts of the United States in which there are not courts of equity, with the ordinary equity jurisdiction, the power of prescribing the mode of executing their decrees in equity by rules of court: provided, however, that it shall be in the power of the courts, if they see fit, in

their discretion, by rules of court, so far to alter final process in said courts as to conform the same to any change which may be adopted by the legislatures of the respective states for the state courts." · The act of August 23d, 1842 [5 Stat. 516], further supplementary to the judiciary act of 1789, declares, that the supreme court shall have full power and authority, from time to time, to prescribe and regulate and alter the forms of writs and other process to be used and issued in the district and circuit courts of the United States, in suits at common law, or in admiralty, and in equity, pending in the said courts, and generally to regulate the whole practice of said courts. In pursuance of the power and authority granted by this act of congress, the supreme court of the United States, in 1845, adopted and promulgated a set of rules for the government of the federal courts in admiralty proceedings. The rule regulating final process upon decrees for the payment of money, reads as follows (rule 21): "In all cases where the decree is for the payment of money, the libellant may, at his election, have an attachment to compel the defendant to perform the decree, or a writ of execution in the nature of a capias and of a fieri facias, commanding the marshal or his deputy to levy the amount thereof of the goods and chattels of the defendant, and, for want thereof, to arrest his body to answer the exigency of the execution." "In all other cases the decree may be enforced by an attachment to compel the defendant to perform the decree, and upon such attachment, the defendant may be arrested and committed to prison until he performs the decree. or is otherwise discharged by law, or by order of the court."

It is insisted, by the counsel for the defendants, that the foregoing rule, taken in connection with the act of August 23d, 1842, is fully equivalent to an enactment by congress, regulating final process in admiralty on decrees for the payment of money; and that the legislation of the different states, and the practice of the state courts, in matters of law and equity, have no bearing upon the subject; and, further, that as there is no act of congress expressly making lands liable to execution upon admiralty decrees. and as it is not in accordance with long-established usage in the high court of admiralty. in England, to issue executions against lands on its decrees; for these reasons it is urged that the act of congress of May 19. 1828. should not be so interpreted as to conflict with the true intent of the twenty-first rule of admiralty practice, but that said rule should be regarded as designed to cover the whole subject, and as alone containing the present regulation. respecting the execution of admiralty decrees in the circuit and district courts of the United States. On the contrary, it is insisted, by the counsel for the complainants. that by the 4th section of the act of congress of July 4th, 1840 (5 Stat. 392). decrees in admiralty are, by fair implication, made liens upon the real estate of the parties against whom they are rendered; and the like effect (as to admiralty decrees) is claimed to exist under the act of 1828, in virtue of state laws. Hence it is urged that the lien of admiralty decrees, in the courts of the United States, is a legal right attaching to land, and is, therefore, a rule of property arising under the laws of the several states, and cannot be abrogated by a rule of the supreme court.

The language employed in framing the twenty-first rule of admiralty practice, leaves no room to doubt the real and true purpose of its authors: "In all cases where the decree is for the payment of money, the libellant may, at his election, have an attachment to compel the defendant to perform the decree, or a writ of execution in the nature of a capias and of a fieri facias commanding the marshal to levy the amount thereof of the goods and chattels of the defendant, and for want thereof to arrest his body to answer the exigency of the execution." Decrees in courts of admiralty can only be enforced in the mode and by the process properly ordained for their execution. The character and effect of such decrees, and the mode of their execution. is. unquestionably. within the province of congress to determine. By the act of 1842, congress determined and declared, that the supreme court should have full power and authority to prescribe and regulate and alter the forms of writs and other process to be used and issued in the district and circuit courts of the United States. Congress has thus delegated to the supreme court the full and unqualified power to prescribe, to regulate, and to alter writs for the enforcement of decrees in admiralty; and the supreme court has exercised that power, in prescribing the exact process and regulating the particular mode of executing an admiralty decree for the payment of money. The libellant may have an attachment or a capias against the person of the defendant. or a fieri facias against his goods and chattels. These are the only writs. and the mode prescribed is the only mode, by which decrees in admiralty can be lawfully executed by the circuit and district courts. And if the rule is of paramount authority and of binding obligation upon those courts, then they have no power or competent authority to issue an execution against the lands of a defendant, to collect the amount due on a decree in admiralty, for the payment of money. That the supreme court has full power and authority to establish the rule, I have no doubt. In the case of Thompson v. Phillips [Case No. 13,-974], the court say: "Laws which relate to practice, process. or modes of proceeding before or after judgment, are exceptions to the thirty-fourth section of the judiciary act. as congress has legislated on the subject. The supreme court of the United States have established the distinction to be this: State laws, which furnish the court a rule for forming a judgment, are binding on the federal courts, but not laws for carrying that judgment into execution—that is, governed by the acts of

congress and the rules and practice adopted pursuant thereto." So, too, in the case of Bank of U. S. v. Holstead, 10 Wheat. [23 U. S.] 51, where the question arose as to the power of the circuit court of the United States to subject certain property to execution, by rule of court. The supreme court say, that "there is no doubt that congress might have legislated more specifically on the subject, and declared what property should be subject to execution from the courts of the United States. But it does not follow that, because congress might have done this, they necessarily must do it, and cannot commit the power to courts of justice. Congress might regulate the whole practice of the courts, if it was deemed expedient so to do. But this power is vested in the courts." This exposition of the power of the supreme court of the United States to frame rules in relation to executions and other process, is conclusive authority in this court.

But it is said that a decree in admiralty operates as a lien upon the lands of the defendant, and that where a lien exists, the right to issue execution, to levy upon and sell the land to satisfy and discharge the decree, is not only a necessary result of the lien, but is also authorized by the legislation of congress. In England, from which country we derive the fundamental principles of maritime, equity, and common law, no lien on lands is created by a decree in admiralty; nor, according to long-established usage, can execution there be issued against lands upon such a decree. 1 Com. Dig. 393; Clerke, Praxis Adm. 137, 139; Godb. 268; Hall, Adm. 112; Browne, Civ. & Adm. Law, 410. And until the statute of Westminster II. (13 Ed. I.), judgments in personal actions were not liens upon land by the common law. That statute gave the right to issue a writ of elegit, which created the lien. So, too, in relation to decrees in equity for the payment of money. They did not operate as liens on land until the act of 1 & 2 Vict. c. 110. This act of parliament provides that decrees in chancery for the payment of money "shall have the effect of judgments in the superior courts of common law." But no innovation of this kind has ever been incorporated into the maritime jurisprudence of England; and the same exemption of lands from admiralty liens obtains in this country, unless it has been removed by the legislation of congress. I can see nothing in the act of congress of May, 1828, and of July, 1840, that gives to a decree in admiralty the effect of a lien on land. The clause in the third section of the act of 1828, declares that "writs of execution, and other final process, issued on judgments and decrees rendered in any of the courts of the United States, and the proceedings thereupon, shall be the same (except in style) in each state respectively as are now used in the courts of such states." This provision has reference, doubtless, to judgments at law and decrees in chancery, and proceedings upon such judgments and decrees. It

cannot, by any known rule of construction, have application to decrees in admiralty, or to proceedings upon such decrees, and for the obvious reason that by the constitution and laws of the United States, the state courts have no admiralty and maritime jurisdiction, and consequently can render no decrees in admiralty and maritime causes. Equally fallacious is the inference sought to be drawn from the fourth section of the act of 1840. This section provides, that "judgments and decrees shall cease to be liens on real estate in the same manner as judgments and decrees of the state courts now cease, by law, to be liens thereon." The plain import of this statute is, that judgments at law and decrees in chancery rendered in the circuit and district courts of the United States (in any state), having liens upon land, shall cease to be liens, in the same manner as judgments at law and decrees in chancery of the courts of such states cease to be liens. State laws, in virtue of which liens are created on judgments and decrees in the state courts, furnish rules of property; and it was the purpose of congress to put liens of like judgments and decrees in the federal courts upon the same footing. It is analogous in principle to the limitation laws of the several states, which have always been regarded as affording rules of property, and, therefore, rules of decision in the federal courts. The object of the provision, doubtless, was to obtain uniformity of a rule of property, in courts of different jurisdictions, and that rule to be in conformity to state laws. I am unable to see how the fourth section of the act of 1840 should have reference to liens, which by no possibility can have an existence in virtue of state laws, and especially as it was the purpose of congress to limit, and not to extend, the liens of judgments and decrees rendered in the federal courts.

Again, it was urged in the argument, that it is in accordance with the practice and usage of the United States courts, to issue executions against land, or decrees in admiralty; and our attention has been called to the rules of court for the Southern district of New York, as authority for the practice. By the 59th rule of the district court for the Southern district of New York, there is an express consent required, connected with the stipulation, that if the condition is not performed, the court may order execution against the goods, chattels, lands, and tenements of the stipulators; and by the 147th rule of the same court, it is declared that the writ of fieri facias and venditioni exponas should be adopted as final process in that court in all cases for the sale of property, and that the proceedings therein, in admiralty cases, should be conformable to those on the common law side of that court. Those rules were adopted in 1838, and in pursuance of authority supposed to be conferred by the various acts of congress then in force. Whatever authority to prescribe and regulate process was given to the circuit and district courts by

the judiciary and process acts of 1789, and the act of 1792. that authority was merged in the one of like power conferred on the supreme court of the United States by the act of 1842; and the supreme court having exercised the power thus conferred, and prescribed the exact process and designated the particular mode of executing admiralty decrees, it would seem to be conclusive that the inferior courts of the United States could not adopt process and pursue a practice in conflict with that ordained by the supreme court. But I am not advised of the existence of any rule of practice upon the subject of final process and the mode of executing admiralty decrees, adopted by the circuit and district courts for the Southern district of Ohio. What the effect would be of a written consent connected with the stipulation, authorizing the court to issue execution against the land of the stipulators, if the condition should not be performed, it is not now necessary to determine, as no such consent was connected with the stipulation in the case under consideration. From a careful examination of the question raised by the first ground of the demurrer, I am led to the unavoidable conclusion that the circuit court of the United States for the Southern district of Ohio had no authority to issue an execution against the lands of the defendants on said decree in admiralty, and, consequently, that the levy of such execution upon land, and the proceedings of the marshal in relation thereto, are void and of no effect.

It remains to consider whether, upon the facts disclosed by the record, the complainants are entitled, in a court of chancery, to the discovery and general relief prayed for in this case. It is averred (in substance) by the complainants, in their bill, that the defendants owe them a sum of money. certain in amount, evidenced by an admiralty decree, rendered by a court of record and of competent jurisdiction; that a fieri facias has been issued on said decree, and no goods and chattels found by the marshal whereon to levy; that the defendants have lands which can be made subject to the payment of said decree only through the aid, and by the interposition. of a court of equity. These are simple, and yet they are the important facts for consideration in this branch of the case. It is both the policy and the principle of American as well as of English jurisprudence. to subject a debtor's property to the payment of his debts; and it is laid down as an undeniable proposition, that the jurisdiction of a court of equity will be exercised when the principles of law by which the ordinary courts are guided, give a right. but the powers of those courts are not sufficient to afford a complete remedy, or their modes of proceeding are inadequate for the purpose. Mitf. Eq. Pl. 103; 1 Vern. 399; 3 Atk. 192; Ves. 51; 2 Johns. Ch. 283. This doctrine, in its broadest sense, was recognized by the supreme court of Ohio in the case of Cram v. Green's Adm'r, 6 Ohio, 429. The

court there say: "That the chancellor has jurisdiction in those cases where a plain, adequate, and complete remedy cannot be had at law, is an apothegm by which his power is limited in every country where the distinction is known between courts of law and equity. The extent of this restriction has been long since defined. It is a technical maxim (say the court), adopted by our legislature in its technical sense, and received the same interpretation here as elsewhere. In our practice we do not give it a restricted meaning, but sustain our powers to the same extent as other similar tribunals, where jurisdiction depends on this principle. It is a part of the general chancery law, that where a class of cases are the objects of chancery jurisdiction, that jurisdiction is not taken away because courts of law subsequently administer a remedy." Hence, it is a principle sanctioned by courts of equity everywhere, that in order to obtain satisfaction of a judgment at law, where execution has been issued, and no property found on which to levy, the judgment creditor may file his bill in a court of chancery for relief, and he will be entitled to the aid of that court to discover and apply the debtor's property to the payment of the judgment. This principle is so well established that illustration and citation of authorities is deemed to be unnecessary. The case before us is where a decree in admiralty for the payment of money was obtained, an execution issued upon it against the goods and chattels of the defendants, and a return of the writ by the marshal, with an endorsement of nulla bona. I think the case is not distinguishable, in principle, from that of a proceeding in equity, where the foundation of the suit is an unsatisfied judgment at law. The claim is for the payment of money as much in the one case as in the other, and both are results of adjudications of courts of record. It is true, that by the 21st rule of admiralty practice, the creditor in the one case may have a ca. sa. against the body of the defendant, which has not been resorted to. So, too, upon a judgment at law in cases of fraudulent contract, the creditor may have his writ of capias against the body of the defendant. Yet this cumulative remedy (neglected to be exercised) is, of itself, no obstacle in the way of equity proceedings to satisfy the judgment. The analogy holds good in like proceedings on a decree in admiralty. The right to a capias against the body is cumulative upon the right to a fieri facias against goods and chattels. and I am unable to see why the neglecting to issue a capias on the decree should operate as an obstacle to a chancery proceeding to obtain satisfaction of the debt. any more than a like neglect to issue a capias on a judgment at law, where a party is entitled to it.

On the whole, I am of the opinion that the demurrer should be sustained. so far as the allegations in the bill relate to the issuing of an execution against land, and the levy and

other proceedings of the marshal thereon affecting the lands of the defendants. But, as the bill in other respects presents a case on which it is both competent and proper for the court to grant the discovery and general relief prayed for, the demurrer should be overruled.

[The case was afterwards taken to the supreme court, upon a certificate of division in opinion between the judges. See 2 Black (67 U. S.) 430.]